Hardin v. Baker.

---

No. 18,846.

J. H. HARDIN, *Appellee,* v. M. C. BAKER et al. (M. W. DEY, Garnishee, *Appellant*).

### SYLLABUS BY THE COURT.

REAL-ESTATE AGENT—*Contract for Exchange of Lands—Sale Not Completed—Commissions.* H. and B. contracted to exchange certain lands and to put the papers in the hands of D., a real-estate agent. B. failed to perform and H. obtained judgment against him for damages in an action in which he garnished D., who had in his hands certain boot money received by him in a trade he had made of a portion of H.'s lands for land in Texas with the consent of B. on the supposition that the original contract would be carried out. D. claimed a commission from B., but the evidence showed that D. had no contract with B. for a commission, and further, that the boot money in his hands belonged to H. *Held,* that D. was not entitled to the commission claimed.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed October 10, 1914. Affirmed.

*Clarence Spooner,* of Newton, for the appellant.

*Ezra Branine,* and *Harry W. Hart,* both of Newton, for the appellee.

The opinion of the court was delivered by

WEST, J.: Hardin lived in Colorado and owned some Kansas lands. Baker lived in Louisiana, where he owned certain land. Dey is a real-estate agent at Newton, Kan. Hardin and Baker agreed to exchange certain of these lands, the deeds and abstracts to be placed in the hands of Dey and delivered by him when properly approved. Hardin executed and deposited his papers but Baker did not. Dey found a chance to trade 128 acres of the Harvey county land, worth about $12,-000, for 300 acres of land in Madison county, Texas, and $1215 in cash, such amount being enough to pay off the mortgage thereon and leave a few hundred dollars remaining. This Texas land was worth about $1500. Hardin sued Baker for damages for nonperformance of the main contract and took judgment by default for $21,579, and garnished Dey, who held the balance of the cash received with the Texas land, and who, in his answer, claimed $300 thereof as a commission from Baker for the exchange. The court found that the exchange was conducted by Baker through Dey, who represented him, but that there was no express agreement for commission, and concluded that Dey was entitled to none.

Dey appeals, and contends that as he performed services for Baker, which the court found would have been reasonably worth $300 if contracted for and which were accepted by Baker, he should be allowed such sum as a commission. The findings do not show why the court concluded that Dey was not entitled to a commission, but the evidence does. Hardin testified that Dey told

him about the chance to trade the Harvey county land for the Texas land, and that he, Hardin, consented with the understanding that Dey would hold the deed to the Texas land, either in blank or in Hardin's name, for protection and would not deliver it to Baker; that about ten months afterwards he learned that Dey had recorded the deed to the Texas land and had not held it as he agreed to; that Hardin went to New Orleans and saw Baker, who deeded the Texas land to him; that Dey told him that he had $615 in his hands which belonged either to him or to Baker, and that Dey's attorney had advised him to retain it until he could find out to whom it belonged. Dey himself testified that the trade was made upon the assumption that Hardin and Baker would complete their contract, that he represented "Whoever owned that land and whoever would get the land when the deal was wound up. I had promised both Mr. Hardin and Mr. Baker;" that he first heard of the Texas land from Wichita parties and suggested the matter to Baker, who consented to the trade if Dey could get Hardin's consent.

It seems fairly clear, therefore, that by promising Hardin to hold the deed to the Texas land for his protection Dey succeeded in causing Hardin to part with land worth $12,000, for which he has to show land worth about $1500, and that the trade was not of Baker's contrivance but of Dey's, who was really using the land of his clients to deal with the Wichita parties. Had the trade gone through the 128-acre tract would have become Baker's, and it is not reasonable to suppose he would have knowingly authorized Dey to exchange it for land worth so little as the Texas land. The trade never having been completed, the land never really became Baker's. When Baker found that the deed to him had been recorded he conveyed to Hardin, thus showing that whatever proceeds of the 128 acres there were belonged to Hardin and not to Baker. And,

of course, Dey could not retain money of Hardin's to pay himself a debt owing him by Baker.

Under the evidence the court was right in its conclusion that no commission was due from Baker, and certainly none could be claimed out of Hardin's money.

The judgment is affirmed.